IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                   :
STEAMFITTERS LOCAL 449 PENSION     :
FUND, Individually and on          :
Behalf of All Others Similarly     :        Civil Action
Situated,                          :    No. 11-6247 (JBS/KMW)
                                   :
              Plaintiff,           :
                                   :
        v.                         :
                                   :
CENTRAL EUROPEAN DISTRIBUTION      :
CORPORATION, et al.,               :
                                   :
              Defendants.          :
_____:


_____
                                   :
TIM SCHULER, Individually and      :
on Behalf of All Others            :
Similarly Situated,                :
                                   :        Civil Action
              Plaintiff,           :    No. 11-7085 (JBS/KMW)
                                   :
        v.                         :
                                   :
CENTRAL EUROPEAN DISTRIBUTION      :
CORPORATION, et al.,               :
                                   :
              Defendants.          :
_____:
```

**OPINION**

APPEARANCES:

Steven J. Toll
Daniel S. Sommers
Julie G. Reiser
S. Douglas Bunch
Cohen, Milstein, Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
        -and-

Michael Benjamin Eisenkraft
Cohen, Milstein, Sellers & Toll, PLLC
88 Pine Street
14th Floor
New York, NY 10005
     -and-
Mark R. Rosen
Barrack, Rodos, & Bacine
One Gateway Center
Suite 2600
Newark, NJ 07102
     Attorneys for Movants Arkansas Public Employees Retirement
     and Fresno County Employees' Retirement Association


Tina Moukoulis
Deborah Gross
Law Office of Bernard M. Gross, PC
John Wanamaker Building
Suite 450
Juniper and Market Streets
Philadelphia, PA 19107
     -and-
Darren Robbins
Tricia McCormick
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
     Attorneys for Movant the Prosperity Group


Kenneth J. Cesta
Hoagland, Longo, Moran, Dunst & Doukas, LLP
40 Paterson St.
New Brunswick, NJ 08901
     -and-
Robert J. Del Tufo
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
     Attorneys for Defendant Central European Distribution
     Corporation


Diane P. Sullivan
Weil Gotshal & Manges LLP
301 Garnegie Center
Suite 303
Princeton, NJ 08540
     Attorney for Defendants Christopher Biederman and William V.
     Carey

2

**SIMANDLE,** Chief Judge:

## I.    INTRODUCTION

These cases are federal securities class actions brought by shareholders in the Central European Distribution Corporation under §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder. Presently various parties are vying to be appointed as lead plaintiffs, together with lead counsel, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(I).

This matter comes before the Court on review of the Report and Recommendation ("R & R") filed by Magistrate Judge Karen M. Williams on June 13, 2012. [Docket Item 49.][1] The R & R addresses the following motions: Motions to Appoint Lead Plaintiff, Appoint Counsel, and Consolidate Related Actions filed by the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association (collectively "Arkansas") on December 23, 2011 [Docket Item 4]; and Motions to Consolidate Cases, Appoint Lead Plaintiff, and Appoint Counsel filed by the

---

[1] This opinion involves two cases, Steamfitters Local 449 Pension Fund v. Central European Distribution Corp., Civ. No. 11-6247 commenced on October 24, 2011 and Schuler v. Central European Distribution Corp., Civ. No. 11-7085 commenced on November 15, 2011. As discussed *infra*, these cases will be consolidated. The filings on the two dockets relating to the motions currently at issue are identical. Therefore, the Court will only reference docket items on the first-filed case, Civ. No. 11-6247, unless otherwise noted.

Prosperity Group on December 23, 2011 [Docket Item 9].

The R & R recommends that (1) the Court should consolidate Steamfitters Local 449 Pension Fund v. Central European Distribution Corp., Civ. No. 11-6247 commenced on October 24, 2011, and Schuler v. Central European Distribution Corp., Civ. No. 11-7085 commenced on November 15, 2011; (2) Arkansas' Motion for Appointment as Lead Plaintiff should be granted, and the Prosperity Group's competing Motion for Appointment as Lead Plaintiff should be denied; and (3) Arkansas' selection of Cohen Milstein Sellers & Toll PLLC as lead counsel and Barrack Rodos & Bacine as liaison counsel should be approved.

The Motion for Consolidation is unopposed and meritorious. The principal dispute lies with the competing motions to appoint lead plaintiff. The Court accepts the Magistrate Judge's recommendation that Arkansas should be appointed lead plaintiff because the Prosperity Group is subject to unique defenses. The Prosperity Group has not objected to Arkansas' choices regarding counsel, and the Court accepts the Magistrate Judge's recommendation to approve Arkansas' selection of Cohen Milstein Sellers & Toll as lead counsel and Barrack Rodos & Bacine as liaison counsel.

## II.   BACKGROUND

### A. Factual Background

Plaintiff Steamfitters Local 449 Pension Fund filed a

4

Complaint against the Central European Distribution Corporation ("CEDC"), Christopher Biedermann, and William Carey in the District of New Jersey on October 24, 2011. [Docket Item 1.] Plaintiff Tim Schuler filed a Complaint against the same Defendants on November 15, 2011. [Civ. No. 11-7085, Docket Item 1.] The two complaints make similar factual and legal allegations.

Defendant William V. Carey was, at all relevant times, Chairman, Chief Executive Officer, and President of CEDC. (Civ. No. 11-6247, Compl. ¶ 14.) Defendant Christopher Biedermann was, at all relevant times, Vice President and Chief Financial Officer of CEDC. (Id. ¶ 15.)

The action is a federal securities action on behalf of purchasers of CEDC common stock between August 5, 2010 and February 28, 2011 (the "class period"). (Id. ¶ 1.) CEDC operates primarily in the alcohol beverage industry. (Id. ¶ 2.) It is one of the largest vodka producers in the world and has the largest "integrated spirit business" in Central and Eastern Europe. (Id. ¶ 2.)

The Complaint alleges, essentially, that Defendants issued materially false and misleading statements regarding CEDC's business and prospects that deceived the public, artificially inflated the price of CEDC publicly traded securities, and caused the Plaintiff and other members of the public to purchase the

5

stock at artificially inflated prices. (Id. ¶ 16.) Specifically,
Defendants allegedly failed to disclose double digit declines in
CEDC's vodka portfolio, growing loss of market share, an
impairment charge[2] that CEDC recorded late, adverse effects from
a new product launch, and an excise tax issue impacting
production in Russia. (Id. ¶¶ 24, 29, 31.)  Plaintiff Tim
Schuler's Complaint also alleges that CEDC's financial statements
violated federal regulations by failing to comply with Generally
Accepted Accounting Principles ("GAAP"). (Civ. No. 11-7085,
Compl. ¶¶ 32-34.)

### B. Jurisdiction and Venue

The Court has jurisdiction over this action because it
arises under the Securities Exchange Act of 1934. (Civ. No. 11-
6247, Compl. ¶ 1.) The Court has subject matter jurisdiction
under 28 U.S.C. § 1331. Venue is proper because many of the
alleged acts and practices of which Plaintiff complains occurred
in this district. (Id. ¶ 10.) In addition, Defendant CEDC is a
Delaware corporation with its principal executive offices located

---

[2]An impairment charge is often defined as: "A specific
reduction on a company's balance sheet that adjusts the value of
a company's goodwill. Due to accounting rules, a company must
monitor and test the value of its goodwill, to determine if it is
overvalued. If it is, the company must issue an impairment charge
on its balance sheet, to take into account the reduced value of
the goodwill." In re Thornburg Mortg., Inc. Sec. Litig., 695 F.
Supp. 2d 1165, 1210 No.15 (D.N.M. 2010).

in Mt. Laurel, New Jersey. (Civ. Action 11-7085, Compl. ¶ 13.)

## C. Procedural History

### i. The Motions at Issue

Presently before the Court are the following motions: Motions to Appoint Lead Plaintiff, Appoint Counsel, and Consolidate Related Actions filed by Arkansas on December 23, 2011 [Docket Item 4]; and Motions to Consolidate Cases, Appoint Lead Plaintiff, and Appoint Counsel filed by the Prosperity Group on December 23, 2011 [Docket Item 9]. The Motions to Consolidate are unopposed. The Motions to Appoint Lead Plaintiff have generated fierce debate.[3]

### ii. The Two Movants for Appointment as Lead Plaintiff

In this section, the Court describes both lead plaintiff movants and the arguments each made in its briefing describing why it believes it is the most meritorious lead plaintiff.

### a. The Prosperity Group

On December 23, 2011, the Prosperity Group filed a Motion for Appointment as Lead Plaintiff and requested approval of its selection of Robbins Geller Rudman & Dowd LLP and the Law Offices of Bernard M. Gross, P.C. as lead counsel for the class. [Docket Item 10.] The Prosperity Group is one of the largest Russia-

---

[3]For ease of reference, because the briefing history is extensive and complicated, the Court created an appendix with a chart listing the docket number, filing date, full title, and abbreviated title for each brief. The Court will use the abbreviated titles to reference and cite the briefs.

focused investors in the world. (Prosperity Group's Lead Plaintiff Memorandum, at 2.) It purchased over 1.1 million shares of CEDC common stock during the class period and alleges resultant losses of almost $13 million. (Id. at 3.) Arkansas has acknowledged that the Prosperity Group suffered more losses than any other investor. (E.g. Arkansas' Reply to Prosperity Group's Opposition re Lead Plaintiff, at 1.)

The Prosperity Group consists of nine related investment entities: Prosperity Capital Management Limited ("PCM") is the discretionary investment manager for the Russian Prosperity Fund, the Prosperity Cub Fund, the Prosperity Quest Fund, and the Prosperity Russia Domestic Fund Limited (collectively, the "PCM Managed Funds"). (Prosperity Group's Lead Plaintiff Memorandum, at 1, no.2.) Each of the PCM Managed Funds has a wholly owned subsidiary (collectively, the "Subsidiaries"): Protsvetaniye Holdings Limited is a wholly owned subsidiary of the Russian Prosperity Fund; Medvezhonok Holdings Limited is a wholly owned subsdiary of the Prosperity Cub Fund; Lancrenan Investments Limited is a wholly owned subsidiary of the Prosperity Quest Fund; and Roselia Limited is a wholly owned subsidiary of Prosperity Domestic Russia Fund. (Id.) The following chart elucidates this structure:

8



PCM's managing director Oliver Sinton executed a certification on December 15, 2011 ("Sinton Cert.") stating that the Prosperity Group is competent to serve as lead plaintiff. [Docket Item 11-1.] Sinton certified that each of the PCM Managed Funds and the Subsidiaries authorized PCM, in its capacity as discretionary investment manager, to pursue "any claims, demands,

or causes of action arising from the purchases of CEDC common stock . . . ." (Sinton Cert. ¶ 9.) This grant of authority was not an assignment of title. (Docket Item 50-1, oral arg. tr. at 31, Mar. 27, 2012.)

The entities that actually purchased or owned CEDC stock, and thus suffered losses, during the class period are the Subsidiaries. (Sinton Cert. ¶ 6; see also oral arg. tr. at 29-31.) The Subsidiaries are therefore the only entities within the Prosperity Group that were injured by Defendants' alleged actions. PCM has authority to bring a lawsuit, but it has no ownership interest in the claims. (Sinton Cert. ¶ 9; see also oral arg. tr. at 29-31.) The PCM Managed Funds have neither authority to bring lawsuits nor title to the claims. (Oral arg. tr. at 31.)

Arkansas opposed the Prosperity Group's Motion for Appointment as Lead Counsel and asserted that the Prosperity Group was subject to unique defenses that would preclude sufficient performance as lead plaintiff. Specifically, Arkansas asserted that (1) PCM lacked standing because it had no ownership interest in the underlying claims and therefore had not suffered an injury-in-fact; (2) the PCM Managed Funds had neither standing nor authority to sue because they had no title to the claims and no power of attorney; (3) the Subsidiaries did not have authority to sue because they had delegated their authority to PCM; (4) the

10

Prosperity Group contained too many entities and was too large to effectively manage the litigation; and (5) the Prosperity Group's ownership stakes and board seats at some of Russia's largest vodka retailers made it subject to unique defenses regarding its knowledge of CEDC's alleged misrepresentations. (Arkansas' Opposition to Prosperity Group's Appointment as Lead Plaintiff.)

### b. Arkansas

The second, and only other, movant for lead Plaintiff status was the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association (collectively "Arkansas"), which timely moved to be appointed lead plaintiff on December 23, 2011. [Docket Item 4.] Arkansas' alleged losses during the class period totaled $1,122,132.00. (Arkansas' Lead Plaintiff Memorandum, at 2.) Gail Stone, the Executive Director of the Arkansas Public Employees Retirement System, and Becky Van Wyk, the Assistant Retirement Administrator of the Fresno County Employees' Retirement Association, executed a certification on December 22, 2011, describing Arkansas' competence to serve as lead plaintiff. [Docket Item 7.] Arkansas also moved the Court to approve its selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel and Barrack, Rodos & Bacine as Liaison Counsel. [Docket Item 4.]

In its Opposition to Arkansas' Appointment as Lead Plaintiff, the Prosperity Group did not challenge the typicality

11

or adequacy of Arkansas' claims, did not present any unique defenses to which Arkansas might be subject, and did not challenge Arkansas' counsel selections. It simply asserted that it is the presumptive lead plaintiff because it has the largest financial loss and meets the requirements of Rule 23(a). It noted that its losses were "more than 10-times larger than the other lead plaintiff movant" (Prosperity Group's Opposition to Arkansas' Appointment as Lead Plaintiff, at 2(emphasis omitted)) and that its claims were typical and adequate.

### iii. The Magistrate Judge's Report and Recommendation

On March 27, 2012, Magistrate Judge Williams held oral argument regarding these motions and, on June 13, 2012, she filed the Report and Recommendation ("R & R") [Docket Item 49] that is presently before the Court.

The R & R recommended that the Court should consolidate the two actions proposed for consolidation: Steamfitters Local 449 Pension Fund v. Central European Distribution Corp., Civ. No. 11-6247 commenced on October 24, 2011, and Schuler v. Central European Distribution Corp., Civ. No. 11-7085 commenced on November 15, 2011. The R & R found that consolidation was appropriate because "[b]oth actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act . . . and make identical claims against the same defendant for the same actions during the same period of time." (R & R at 5.)

12

The R & R also recommended that Arkansas' Motion for Appointment as Lead Plaintiff should be granted, and the Prosperity Group's Motion for Appointment as Lead Plaintiff should be denied because the Prosperity Group was subject to unique defenses regarding its standing.

The R & R found that under the Private Securities Litigation Reform Act's ("PSLRA") procedure for appointing a lead plaintiff, the Prosperity Group would be the presumptive lead plaintiff because it suffered the most financial losses and made a prima facie showing of adequacy and typicality. (Id. at 22-23.) The R & R disregarded Arkansas' argument that the Prosperity Group was too large to effectively manage the litigation, finding that the Prosperity Group was "composed of close knit, cohesive investors." (Id. at 24, No. 10.) The R & R also disregarded Arkansas' argument that PCM had access to inside information about Russian vodka retailers, finding that "Arkansas ha[d] not presented adequate proof to substantiate its allegations. . . ." (Id.)

But the R & R still found that Arkansas should be appointed lead plaintiff because the Prosperity Group would be subject to unique defenses regarding its standing: "[I]t would be unwarranted to subject class members to a risk of prejudice stemming from the Prosperity Group's unique Article III standing issues, and . . . any presumption in favor of the Prosperity

Group has been rebutted. . . ." (<u>Id.</u> at 28.)

In addition to finding that the Prosperity Group was subject to unique defenses regarding its standing, the R & R also found that the Prosperity Group lacked standing under Article III of the United States Constitution. (R & R at 17.) It noted that, as an investment advisor without title to the underlying claim, PCM had not suffered an injury-in-fact. (<u>Id.</u> at 16-17.) The R & R summarized recent developments in standing law in securities cases, discussed *infra,* and found that plaintiffs "must have legal title to, or some type of proprietary interest in, the claim they are litigating in order to satisfy the minimum requirement for injury-in-fact." (<u>Id.</u> at 16.) It also determined that the PCM Managed Funds lacked both title to the claims and authority to sue; and, while the Subsidiaries had legal title, they lacked authority to sue because they had delegated their power to sue to PCM. (<u>Id.</u> at 17-18.) The R & R concluded "[b]ecause PCM and the Funds do not have Article III standing, and the Subsidiaries have apparently delegated their ability to sue to PCM, the Court finds that the Prosperity Group, as a whole, cannot satisfy the Article III constitutional requirements of standing." (<u>Id.</u>) The R & R clarified that "PCM's and the Funds' clear lack of standing is a sufficient basis to find that the Prosperity Group, as a whole, lacks Article III standing." (R & R at 18, No. 6.) In other words, the R & R's finding that the

14

Subsidiaries may have standing did not change its holding that five of the Prosperity Group's nine entities lacked standing.

The Magistrate Judge also declined to appoint some of the Prosperity Group entities in lieu of the group as a whole. The R & R noted that permitting the Prosperity Group to "modify its leadership structure or composition at this stage would be akin to permitting a post-filing assignment for the purpose of curing deficient standing, a course of action specifically advised against. . . ." (<u>Id.</u>) In addition, it found that the Subsidiaries lacked the authority to sue because they had "apparently delegated their ability to sue to PCM. . . ." (<u>Id.</u> at 17.)

The R & R then examined Arkansas' potential to act as lead plaintiff and found that it satisfied typicality and adequacy requirements and that "Arkansas's financial interest in the litigation should ensure vigorous advocacy on behalf of the class." (<u>Id.</u> at 29.) The R & R also approved Arkansas' selection of Cohen Milstein as lead counsel and Barrack Rodos as liaison counsel, finding that "these law firms are sufficiently experienced in securities class action litigation. . . ." (<u>Id.</u> at 30.) The Magistrate Judge thus recommended that the Court appoint Arkansas to be lead plaintiff. (R & R at 30.)

### iv. Objections to the Report and Recommendation and Subsequent Briefing

On June 28, 2012, the Prosperity Group filed Objections to the Report and Recommendation. [Docket Item 50.] The Prosperity

Group objected to Judge Williams' "illogical conclusion that
neither the investment manager nor its affiliated investment
entities possess standing." (Prosperity Group's Objections to R &
R, at i.) It argued that, if the Court refused to appoint the
Prosperity Group, then the Subsidiaries should be appointed
because they suffered the largest financial losses and have
authority to bring suit. (Id. at 7-8.) The Prosperity Group
asserted that its inclusion of both PCM and its affiliated PCM
Managed Funds and Subsidiaries ensured that it would satisfy
standing requirements regardless of recent developments in
standing law. (Id. at 5-6.) In addition, it asserted that case
law allows the Court to appoint some, but not all, members of a
lead plaintiff group, thus showing that the Court should appoint
the Subsidiaries. (Id. at 10.)

On July 12, 2012, Arkansas filed a reply brief supporting
the Magistrate Judge's findings in the R & R. [Docket Item 54.]
Arkansas noted the Prosperity Group's Objections did not address
the R & R's finding that class members should not be subject to
the expense of litigating defenses unique to the Prosperity
Group. (Arkansas' Response to Prosperity Group's Objections to R
& R, at 23.)

Arkansas also argued that the Prosperity Group cannot, at
this stage, move to appoint the Subsidiaries as lead plaintiff
because the Prosperity Group did not move to appoint the

16

Subsidiaries as lead plaintiff before the December 23, 2011 filing deadline. (Arkansas' Response to Prosperity Group's Objections to R & R, at 18-19.) Arkansas noted that "the statutory deadline for filing a lead plaintiff motion has expired and filing one now is strictly prohibited." (Id. at 19.) It also noted that the Prosperity Group did not move to appoint the Subsidiaries alone, as opposed to the Subsidiaries together with the PCM managed funds, as lead plaintiff until it filed objections to the R & R. (Id.) And Arkansas argued that the Subsidiaries never submitted the certification required under the PSLRA and that the Sinton certification, filed on behalf of PCM and the Prosperity Group, does not contain the mandatory representations that the PSLRA would require from the Subsidiaries. (Id. at 3, no.2.)

On July 24, 2012, the Prosperity Group filed a letter with the Court requesting permission to file a reply to Arkansas' Response to the Prosperity Group's Objections.[4] [Docket Item 57.]

_____

[4] The Federal Rules of Civil Procedure permit written objections to a magistrate judge's report and recommendation and responses to those objections, but they do not mention replies. Fed. R. Civ. P. 72(b)(2). The Prosperity Group requested leave to file a reply. The Court reviewed the Prosperity Group's proposed Reply [Docket Item 57-1] and quoted from it in this Opinion. Leave is therefore granted. In its letter, the Prosperity Group also requested oral argument before the Court. On July 27, 2012, Arkansas filed a letter in response and, *inter alia,* suggested that another oral argument is unnecessary. [Docket Item 58.] The Court agrees. There were three rounds of briefing before Magistrate Judge Williams held oral argument on March 27, 2012 and, including the Prosperity Group's reply, three rounds of

Attached to the letter was the Prosperity Group's Reply. [Docket Item 57-1.] In its Reply, the Prosperity Group argued that "[t]here can be no legitimate question that the Subsidiaries timely moved to be appointed lead plaintiff" because the Subsidiaries have always been included as part of the Prosperity Group. (Prosperity Group's Reply re R & R, at 2.) In addition, it argued that there is no question that the Subsidiaries timely submitted the certification required by the PSLRA because "Sinton was authorized to sign the certification on behalf of all the entities comprising the Prosperity Group. . . ." (Id. at 10.) It further explained that the Subsidiaries have no employees, and Mr. Sinton conducts all operations on their behalf. (Id. at 10-11.)

## III. DISCUSSION

The Court will now proceed to its analysis of Judge Williams' Report and Recommendation. The Court will adopt all of the Magistrate Judge's recommendations regarding the motions at

---

briefing after Judge Williams filed the R & R. In addition, the Court has reviewed the oral argument transcript and sees no need to subject the parties, many of whom traveled great distances to attend on March 27th, to another oral argument on the same issues. The Judge reviewing an R & R does not normally convene a second hearing, as Local Civil Rule 72.1(c)(2) provides in relevant part: "The Judge, however, need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses, or recommit the matter to the Magistrate Judge with instructions."

issue. But it will not adopt the Magistrate Judge's findings that the Prosperity Group lacks standing and that the Subsidiaries lack authority to sue; those issues are not ripe for review and deciding them is beyond the scope of the motions before the Court.

### A. Standard of Review

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive or non-dispositive. With non-dispositive motions decided under 28 U.S.C. § 636(b)(1)(A), the "district court may modify the magistrate's order only if the district court finds that the magistrate's ruling was clearly erroneous or contrary to law." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1120 (3d Cir. 1986). The statute outlining magistrate judges' authority, 28 U.S.C. § 636, "distinguishes between regular pretrial matters, which a magistrate judge may decide, and those dispositive matters which have a preclusive effect on the parties, about which the magistrate judge may only make a recommendation to the court." N.L.R.B. v. Frazier, 966 F.2d 812, 816 (3d Cir. 1992). This distinction ensures that Article III judges retain adjudicatory power over dispositive motions. Id. With respect to dispositive motions decided under 28 U.S.C. § 636(b)(1)(B), the district court must review the magistrate judge's report and recommendation de novo. 28 U.S.C. § 636(b)(1)(C).

Whether the subject matter of a motion is dispositive or non-dispositive can be unclear.  One court has found that motions to appoint lead plaintiff, appoint counsel, and consolidate are all non-dispositive. In re Comverse Tech., Inc. Derivative Litig., 06-CV-1849 NGG RER, 2006 WL 3511375 *2 (E.D.N.Y. Dec. 5, 2006) ("The parties' non-dispositive motions to . . . appoint a lead plaintiff and lead counsel were thus properly addressed by [Magistrate] Judge Reyes."). In addition, these motions are not listed under the 28 U.S.C. § 636 list of dispositive motions and they do not seem to have preclusive effects: None of these motions will preclude any party's right to seek relief from Defendants. And there have been District of New Jersey cases in which magistrate judges have appointed interim class counsel before class certification occurred. E.g., Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 446 (D.N.J. 2009); Waudby v. Verizon Wireless Services, LLC, 248 F.R.D. 173, 175 (D.N.J. 2008). Such appointment seems similar to the motions at issue here.

But not all dispositive motions are listed under 28 U.S.C. § 636. For example, motions to remand are not listed, but they are dispositive in the Third Circuit. In re U.S. Healthcare, 159 F.3d 142, 145 (3d Cir. 1998). Motions to appoint lead counsel and lead plaintiff resemble class certification motions to the extent that they consider issues of typicality and adequacy under Rule 23,

and 28 U.S.C. 636(b)(1)(A) lists a motion to "dismiss or permit the maintenance of a class action" as a dispositive motion subject to de novo review. 28 U.S.C. 636(b)(1)(A); see also Local Civil Rule 72.1(a)(2) (listing class certification motions as dispositive), Schnall v. Amboy Nat'l Bank, 2002 U.S. Dist. LEXIS 17879 (D.N.J. July 12, 2002) (district court reviewed magistrate judge's Report and Recommendation assessing class certification motion). In short, it is unclear whether motions to appoint lead plaintiff and lead counsel are dispositive or non-dispositive, and arguments could be made both ways.

The Court need not conclusively decide here whether motions to appoint lead plaintiff and lead counsel are dispositive or non-dispositive because, even if they are non-dispositive, "a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo." Doe v. Hartford Life & Acc. Ins. Co., 237 F.R.D. 545, 548 (D.N.J. 2006); see also Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc., 629 F. Supp. 2d 416, 424 (D.N.J. 2009) (legal conclusions reviewed de novo). Judge Williams made legal conclusions about case law regarding standing and unique defenses in securities class action litigation, and the Court must review those conclusions de novo.

In addition, the District Court must make a de novo determination of those portions of the magistrate judges's report to which a litigant has objected. 28 U.S.C. § 636(b)(1)(C);

21

Fed.R.Civ.P. 72(a); Local Civil Rule 72.1(c)(2). The Prosperity
Group has objected to Magistrate Judge Williams' lead plaintiff
recommendation, thus necessitating *de novo* review. The Court must
also review Judge Williams' findings that the Prosperity Group
lacks standing and that the Subsidiaries lack authority to sue
under the *de novo* standard because those determinations would
have preclusive effects.

**B.   Analysis**

**i. Motion to Consolidate**

The Court accepts the Magistrate Judge's recommendation to
consolidate Steamfitters Local 449 Pension Fund v. Central
European Distribution Corp., Civ. No. 11-6247 commenced on
October 24, 2011 and Schuler v. Central European Distribution
Corp., Civ. No. 11-7085 commenced on November 15, 2011. This
recommendation is meritorious and unopposed. The short caption
for the consolidated action will hereafter be In re Central
European Distribution Corp. Securities Litigation, Civ. No. 11-
cv-6247 (JBS-KMW).

**ii. Cross-Motions to Appoint Lead Plaintiff**

The Court adopts the Magistrate Judge's recommendation to
appoint Arkansas as lead plaintiff and deny the Prosperity
Group's motion for appointment as lead plaintiff. Even though the
Prosperity Group is the presumptive lead plaintiff, it is subject
to unique defenses that will prejudice the class.

22

**a. The Process for Appointing a Lead Plaintiff**

The Private Securities Litigation Reform Act ("PSLRA") outlines a process for selecting a lead plaintiff with the goal of finding a lead plaintiff who can vigorously prosecute the class' interests. See e.g. In re Cendant Corp. Sec. Litig., 404 F.3d 173, 192 (3d Cir. 2005) ("[T]he PSLRA strives to ensure that the lead plaintiff will have both the incentive and the capability to supervise its counsel in the best interests of the class"). Appointing a lead plaintiff involves a two-step process: "the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption." In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001).

The Court must adopt a presumption that the most adequate plaintiff "is the person or group . . . that . . . has the largest financial interest in the relief sought by the class; and . . . otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). For purposes of identifying the presumptive lead plaintiff, the Court must determine whether the movant with the largest financial interest has made a "*prima facie* showing of typicality and adequacy." In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001). If the movant with the largest financial interest makes that *prima facie* showing, it will be the

23

presumptive lead plaintiff.

Once a presumptive lead plaintiff is identified, the Court then determines whether the presumption has been rebutted. The presumption may be rebutted upon proof that the presumptively most adequate plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

The Third Circuit has recognized "the challenge presented by a defense unique to a class representative-the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." Id. at 301.

There is no requirement at this early stage to "prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. . . . The point . . . is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." In re Netflix, Inc., Sec. Litig., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012). If the presumptive

lead plaintiff is subject to unique defenses that are likely to become a major focus at litigation, then the presumption is rebutted and the Court must identify another lead plaintiff.

### b. The Prosperity Group Is the Presumptive Lead Plaintiff, But It Is Subject to Unique Defenses

The Court accepts the Magistrate Judge's finding that the Prosperity Group is the presumptive lead plaintiff. It suffered the most financial losses and it made a prima facie case of adequacy and typicality. (R & R at 23.) But Arkansas has successfully rebutted the presumption by showing that the Prosperity Group is subject to unique defenses.

In order to have Article III standing, a plaintiff must adequately establish, *inter alia,* "an injury in fact (*i.e.,* a concrete and particularized invasion of a legally protected interest)." Sprint Communications Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 273-74 (2008).

District courts in the Third Circuit have previously allowed investment advisors to bring suits on behalf of their clients. E.g. Marden v. Select Medical Corp., 246 F.R.D. 480 (E.D.Pa 2007); see also Prosperity Group's Lead Plaintiff Memorandum at 1, no.2. But recent case law has challenged the premise that an investment advisor has standing, finding instead that an investment advisor has not suffered an injury-in-fact. The Supreme Court recently held that an assignee has standing because it has legal title to the claim, and therefore it has legal title

25

to the injury-in-fact that occurred. Sprint Communic'ns Co., L.P.
v. APCC Servs., Inc., 554 U.S. 269 (2008). After Sprint, the
Second Circuit decided whether an investment advisor, who has
authority to make investment decisions and a power of attorney,
has standing to bring securities lawsuits when it does not own
the underlying securities. W.R. Huff Asset Mgmt. Co., LLC v.
Deloitte & Touche LLP, 549 F.3d 100, 103 (2d Cir. 2008). The Huff
court held that an investment advisor did not have such
authority: "Sprint makes clear that the minimum requirement for
an injury-in-fact is that the plaintiff have legal title to, or a
proprietary interest in, the claim." Id. at 108. And the Huff
Court continued, "a mere power-of-attorney . . . does not confer
standing to sue in the holder's own right because a power-of-
attorney does not transfer an ownership interest in the claim. By
contrast, an assignment of claims transfers legal title or
ownership of those claims and thus fulfills the constitutional
requirement of an injury-in-fact." Id.

    The Eastern District of Pennsylvania recently assessed Huff
and Sprint and decided that "[w]hile Second Circuit decisions are
not binding authority, the Court finds Huff persuasive and will
apply its reasoning. . . . [T]his Court is bound to apply Supreme
Court precedent, which now suggests plaintiffs must have some
type of proprietary interest in the claim they are litigating."
In re Herley Indus. Secs. Litig., 2009 U.S. Dist. LEXIS 91600,

*17-18 (E.D. Pa. Sept. 30, 2009). The Prosperity Group argues, and the Court agrees, that <u>Herley</u> is not controlling. (Prosperity Group's Reply re R & R, at 11.) But <u>Herley</u> acknowledges that there are recent developments in standing law, developments that began with the Supreme Court's decision in <u>Sprint</u>, a decision that is binding. This Court cannot ignore these developments simply because the Third Circuit has not considered them, particularly when the Court must decide whether standing is a unique defense that is likely to play a major role in litigation, regardless of the outcome.

There is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing. "The issue of standing raises constitutional concerns which are no less critical merely because a case involves a class of plaintiffs." <u>In re Herley Indus. Secs. Litig.</u>, 2009 U.S. Dist. LEXIS 91600, *11 (E.D. Pa. Sept. 30, 2009).

In terms of the Prosperity Group, the only entities that actually purchased or owned CEDC stock, and thus incurred any losses, are the Subsidiaries. (Sinton Cert. ¶ 6; <u>see also</u> oral arg. tr. at 29-31.) They are the only entities who suffered an injury-in-fact. PCM has authority to bring a lawsuit, but the Subsidiaries have not assigned their claims to it. (Sinton Cert. ¶ 9; <u>see also</u> oral arg. tr. at 29-31.) The PCM Managed Funds have neither authority to bring lawsuits nor title to the claims.

(Oral arg. tr. at 31.) Essentially, at least five Prosperity Group members are subject to unique defenses regarding their standing.

The Prosperity Group noted, in its memorandum supporting its lead plaintiff motion, that:

> [S]everal courts have held that the investment entities actually holding the purchased securities are the proper entities with standing to pursue securities claims. . . . Consequently, in an abundance of caution, PCM together with the PCM Managed Funds and the PCM Managed Funds' subsidiaries have moved for appointment as lead plaintiff.

(Prosperity Group's Lead Plaintiff Memorandum at 2 no.3.) The Prosperity Group distinguished itself from other cases in which investment advisors were found to lack standing because, in this case, the Prosperity Group included both the investment advisor and the "underlying entities." (Oral arg. tr. at 28.) The Court is not persuaded, however, that the presence of entities that have standing will cure other entities' standing deficiencies.

The Court cannot prejudice the class members by subjecting them to the time and expense of litigating these unique defenses. As a result, the Court finds that the Prosperity Group cannot be lead plaintiff; the Court adopts the Magistrate Judge's recommendation to deny the Prosperity Group's Motion to be Appointed Lead Plaintiff.

### c. The Subsidiaries Are Also Subject to Unique Defenses

The Court also finds that the Subsidiaries would be subject to unique defenses if they were appointed as lead plaintiff in lieu of the Prosperity Group as a whole. Arkansas has noted that the Subsidiaries did not timely file a motion for appointment as lead plaintiff and did not file the certification required by the PSLRA. (Arkansas' Response to Prosperity Group's Objections to R & R, at 19, 3 no.2.)

The Court is not persuaded by the Prosperity Group's argument that the Subsidiaries timely filed. The first indication that the Prosperity Group was moving to appoint some, but not all, of its entities came on January 27, 2012 in the Prosperity Group's Reply to Arkansas' Opposition Regarding Lead Plaintiff [Docket Item 33]. At that point, the Prosperity Group first suggested that "[i]f the Court . . . finds that PCM lacks standing to sue, then the Funds and Subsidiaries have standing to assert the claims, and should be appointed Lead Plaintiff." (Prosperity Group's Reply to Arkansas' Opposition Re Lead Plaintiff, at 6.) This request came well after the December 23, 2011 filing deadline, and it included the PCM Managed Funds, who have neither title to claims nor authority to sue. (Oral arg. tr. at 31.) The Prosperity Group's first suggestion that the Subsidiaries, and the Subsidiaries alone, should be appointed lead plaintiff came in its Objections to the R & R, which were

29

filed on June 28, 2012. (Prosperity Group's Objections to R & R, at 8.) The Prosperity Group argues that the 60-day deadline is not a barrier because the Subsidiaries are part of the Prosperity Group, which did timely file. (Prosperity Group's Reply re R & R, at 2.)

The question here is whether, if the Subsidiaries were lead plaintiff, they would be subject to unique defenses regarding timely filing. The Court finds that they would. The PSLRA mandates that class members must move for appointment as lead plaintiff "not later than 60 days after the date on which the notice is published." 15 U.S.C. 78U-4(a)(3)(A)(i)(II). According to one court, "[t]he PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action." Friedman v. Quest Energy Partners LP, 261 F.R.D. 607, 612 (W.D. Okla. 2009). The Prosperity Group does not allege that the Subsidiaries and the Prosperity Group are the same entity, and it seems clear that they are not. The Prosperity Group includes five entities other than the Subsidiaries. The Court cannot assume that the Subsidiaries met the filing deadline simply because the Prosperity Group did. This would present an unusual issue of first impression in this Circuit, the decision on which could go either way. Therefore, the Court finds that the Subsidiaries are subject to a unique defense regarding untimely

filing.

In addition, the Court is not persuaded by the Prosperity Group's argument that the Sinton Certification encompasses the Subsidiaries. Under the PSLRA, a lead plaintiff movant must submit a sworn certification that

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class . . .;
> (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
> (v) identifies any other action under [the PSLRA], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
> (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery. . . .

15 U.S.C. 78u-4(a)(2). The Sinton certification does not make the requisite declarations on behalf of the Subsidiaries. For example, it states, "The PCM Managed Funds and the PCM Managed Funds' Subsidiaries are (collectively) willing to serve as representative parties. . . ." (Sinton cert. ¶ 9.) It does not establish that the Subsidiaries alone are willing to serve as representative parties. It also states that "PCM itself will not accept any payment for serving as a representative party . . ."

(id. ¶ 11), but, once again, this Certification does not
encompass the Subsidiaries. It certifies that "PCM has not sought
to serve as a representative party for a class in an action under
federal securities laws within the past three years," (id. ¶ 12),
but this declaration does not establish that the Subsidiaries
have not done so, nor would the certification be expected to
address the Subsidiaries' qualifications since it is apparent
that their selection as separate lead plaintiff was not sought at
that time. The Prosperity Group argues that Mr. Sinton has the
authority to conduct operations for the Subsidiaries, and that
assertion may be true. But, once again, the Court's inquiry here
is whether the Subsidiaries would be subject to unique defenses.
The PSLRA has specific requirements for lead plaintiff
certifications, and the Court finds that there is substantial
likelihood that the Subsidiaries would be subject to a unique
defense regarding invalid or lack of certification because the
validity of their purported certification is fairly debatable.

     The Court must ensure that the lead plaintiff will not
prejudice the class by subjecting the class to the delay,
expense, and uncertainty of litigating unique defenses. Because
the Subsidiaries are subject to unique defenses regarding
untimely filing and lack of certification, their appointment
would not be in the class' best interest; the Court must look to

the other movant.[5]

### d. Arkansas Will Be Lead Plaintiff

The Court accepts the R & R's finding that Arkansas' claims are typical and adequate. (R & R at 29.) The Prosperity Group has not alleged that Arkansas is subject to unique defenses, nor has it made any other challenge to Arkansas' ability to serve as lead plaintiff. In fact, none of the Prosperity Group's Objections pertained to the merits of Arkansas' motion to be lead plaintiff. (Prosperity Group's Objections to R & R.) The Prosperity Group

---

[5]In its Objections to the R & R, the Prosperity Group argued that the Court should appoint the Subsidiaries because the Court has the "ability to appoint one or more, but not all, members of a lead plaintiff group. . . ." (Prosperity Group's Objections to R & R, at 10.) The Court does not dispute that, in appropriate circumstances, it could choose to exercise this power. The Court has indeed considered doing so. But here, the Court finds that the Subsidiaries are subject to unique defenses that would make them inappropriate lead plaintiffs. In addition, the Court finds that it is inappropriate for the Prosperity Group to object to the Magistrate Judge's failure to sua sponte appoint the Subsidiaries when the Prosperity Group had not moved to appoint them. The Prosperity Group moved, in the alternative, to appoint the Subsidiaries together with the PCM Managed Funds in its Reply to Arkansas' Opposition re Lead Plaintiff. Its first suggestion that the Subsidiaries alone should be appointed came in the Objections to the R & R, and not in any submission prior to it. The Court agrees with other District of New Jersey courts that have held that parties must raise all of their arguments when they are before the Magistrate Judge: "Common sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate." Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 211 (D.N.J. 1997)(quoting Jordan v. Tapper, 143 F.R.D. 567, 571 (D.N.J. 1992)).

has emphasized it had the largest losses, $13 million total. (Id. at 3.) But when the presumptive lead plaintiff with the largest financial losses is subject to unique defenses that will prejudice the class, the Court must look to the next movant. The Court will adopt the Magistrate Judge's recommendation to appoint Arkansas lead plaintiff.

### iii. Motions for Appointment of Counsel

The Prosperity Group has not objected to Arkansas' choices regarding counsel. The Court accepts the Magistrate Judge's recommendation to approve Cohen Milstein Sellers & Toll, PLLC as lead counsel and Barrack Rodos & Bacine as liaison counsel.

### iv. The Prosperity Group's Standing

The R & R found that the Prosperity Group lacked standing, (R & R at 17-18), but the Court will not adopt that finding because it is beyond the scope of the motions currently before the Court: competing motions to appoint lead plaintiff and lead counsel.

The Court declines to decide at this time whether Prosperity Group or some of its members lack standing. To decide the lead plaintiff motions, the Court need only decide whether the issue of standing is a unique defense that is likely to become a major focus at litigation. Absent full briefing on this standing issue, including further explanation of the relationships between the entities within the Prosperity Group, the standing question is

not ripe for review.

The Court recognizes that there is a conflict between the Second Circuit's decision in <u>Huff</u> and many district court decisions in the Third Circuit (most of which precede <u>Huff</u> and <u>Herley</u>). The Third Circuit Court of Appeals has not decided the question of whether an investment advisor who lacks title to claims has standing. The Court does not decide this question here. At this point, it is enough to simply note the legal developments with the <u>Sprint</u>, <u>Huff,</u> and <u>Herley</u> line of cases. As a result of these cases, standing is a unique defense to which the Prosperity Group is subject and which would require substantial attention at litigation, thus detracting from the class' best interests.

The Prosperity Group argued that allowing Arkansas to become the lead Plaintiff would be unfair because the standing law is unclear. It said the R & R

> unfairly compels a movant to speculate as to whether a district court will follow the decisional authority of various district judges in this Circuit or the decision of a panel of a court of appeals outside this Circuit. . . . [G]uessing incorrectly precludes a movant's appointment as lead plaintiff.

(Prosperity Group's Objections to R & R, at 6.) The Court has sympathy for litigants navigating an uncertain legal landscape, but the objective here is to determine which plaintiff will best serve the class' interests. "The lead plaintiff is not the sole client in a PSLRA class action; instead, the lead plaintiff

35

serves as a fiduciary for the entire class." In re Cendant Corp.
Sec. Litig., 404 F.3d 173, 198 (3d Cir. 2005). The Court cannot
prioritize the Prosperity Group over the class as a whole where
there is every likelihood that defenses unique to the Prosperity
Group will be raised, to the detriment of the overall interests
of the class. The Court must not prejudice the class' interests
by subjecting the class to the time and expense of addressing
arguably meritorious defenses unique to the lead plaintiff.

### v. The Subsidiaries' Authority to Sue

The R & R also found that the Subsidiaries lacked authority
to sue CEDC because they had "apparently delegated their ability
to sue to PCM." (R & R at 17.) But the R & R also "refrain[ed]
from making any conclusive determination regarding whether the
Subsidiaries' delegation to PCM of the authority to sue
subsequently precludes the Subsidiaries from the ability to bring
a claim . . .," (Id. at 18 no.6). The Court declines to adopt the
R & R's findings regarding the Subsidiaries' authority to sue.

The Prosperity Group objected to the finding that the
Subsidiaries lacked the authority to sue, asserting that there
was no authority or proof to show "that the Subsidiaries somehow
lost their authority to sue by granting power of attorney."
(Prosperity Group's Objections to R & R at 16.) The Prosperity
Group further argued that clients who suffered losses have
authority to bring claims and an agent's authority is coextensive

with the principal's authority. (Id. at 17.)

Based on the pleadings, briefing, and exhibits, the Court cannot adopt the R & R's finding that the Subsidiaries lack legal authority to sue. The Court is not convinced that the Subsidiaries' grant of authority constituted a wholesale and irrevocable relinquishment of their authority to sue that left them without that power, but the Court need not conclusively decide that question here. It suffices to note that the issue is unique to the Subsidiaries, is not shared with class members, and therefore constitutes a non-frivolous unique defense that would prejudice the class.

The Court must decide which movant should be lead plaintiff. Answering that question requires determining whether the movants are subject to unique defenses. The unique defense analysis yields a conclusive answer without delving into the specifics of the relationship between the Subsidiaries and PCM or the Subsidiaries' grant to PCM of authority to sue. Both the Prosperity Group and the Subsidiaries are subject to unique defenses that would prejudice the class and, as a result, Arkansas must be appointed lead plaintiff.

**IV. CONCLUSION**

The Court adopts the recommendations from the Report and Recommendation filed by Magistrate Judge Karen M. Williams on June 13, 2012 regarding appointment of lead plaintiff and lead

counsel. [Docket Item 49.] The Motions to Appoint Lead Plaintiff, Appoint Counsel, and Consolidate Related Actions filed by the Arkansas Public Employees Retirement System and the Fresno County Employee's Retirement Association (collectively, "Arkansas") on December 23, 2011 [Docket Item 4] are hereby granted. Arkansas will be lead plaintiff, and its selection of Cohen Milstein as lead counsel and Barrack Rodos as liaison counsel is approved. The Prosperity Group's competing motion to become lead plaintiff and appoint counsel filed on December 23, 2011 [Docket Item 9] is denied. The Court does not adopt the Report and Recommendation to the extent it suggested that Prosperity Group lacks standing and that the Subsidiaries lack authority to sue, which issues lie beyond the scope of the present motions.

    The two actions, Steamfitters Local 449 Pension Fund v. Central European Distribution Corp., Civ. No. 11-6247 commenced on October 24, 2011, and Schuler v. Central European Distribution Corp., Civ. No. 11-7085 commenced on November 15, 2011 are now consolidated. The caption for the consolidated action will hereafter be In re Central European Distribution Corp. Securities Litigation, Civ. No. 11-cv-6247 (JBS-KMW).

    The accompanying Order will be entered.


 **August 22, 2012**                    **s/ Jerome B. Simandle**

Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

**APPENDIX**

## Chart of Briefs Filed:

| Civ. No. 11-6247, Docket No. | Date Filed | Full Brief Title | Party | Abbreviated Title |
|---|---|---|---|---|
| 5 | 12/23/11 | Memorandum in Support of Motion of the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association for Appointment as Lead Plaintiff, Appointment of Lead Counsel, and Consolidation of Motions | Arkansas Public Employees Retirement System and Fresno County Employees' Retirement Association ("Arkansas") | "Arkansas' Lead Plaintiff Memorandum" |
| 10 | 12/23/11 | Memorandum of Law in Support of the Prosperity Group's Motion for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and Approval of its Selection of Lead Counsel | Prosperity Group | "Prosperity Group's Lead Plaintiff Memorandum" |
| 21 | 1/10/12 | The Prosperity Group's Opposition to the Competing Motion for Appointment as Lead Plaintiff | Prosperity Group | "Prosperity Group's Opposition to Arkansas' Appointment as Lead Plaintiff" |
| 22 | 1/10/12 | Memorandum in Further Support of Motion of the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association for Appointment as Lead Plaintiff, Appointment of Lead Counsel and Consolidation of Related Actions, and in Opposition to the Competing Motion | Arkansas | "Arkansas' Opposition to Prosperity Group's Appointment as Lead Plaintiff" |
| 32 | 1/27/12 | Reply Memorandum in Further Support of Motion of the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association for Appointment as Lead Plaintiff, Appointment of Lead Counsel and Consolidation of Related Actions, and in Opposition to the Competing Motion | Arkansas | "Arkansas' Reply to Prosperity Group's Opposition re Lead Plaintiff" |
| 33 | 1/27/12 | Reply Memorandum in Further Support of the Prosperity Group's Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel | Prosperity Group | "Prosperity Group's Reply to Arkansas' Opposition re Lead Plaintiff" |
| 03/27/12 | | Oral Argument Before Magistrate Judge Karen M. Williams | | |
| 49 | 6/13/12 | Magistrate Judge Williams' Report and Recommendation | | "R & R" |

| 50 | 6/28/12 | The Prosperity Group's Objections to the Report and Recommendation of U.S. Magistrate Karen M. Williams on Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel | Prosperity Group | "Prosperity Group's Objections to R&R" |
|---|---|---|---|---|
| 54 | 7/12/12 | Memorandum of Law in Support of Magistrate Judge Williams' June 12, 2012 Report and Recommendation to Grant Arkansas and Fresno's Motion for Appointment as Lead Plaintiff, Appoint Cohen Milstein as Lead Counsel and Barrack Rodos as Liaison Counsel, Consolidate the Related Actions, and Deny the Prosperity Group's Competing Motion | Arkansas | "Arkansas' Response to Prosperity Group's Objections to R&R" |
| 57 | 7/24/12 | Reply in Further Support of the Prosperity Group's Objections to the Report and Recommendation of U.S. Magistrate Karen M. Williams on Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel | Prosperity Group | "Prosperity Group's Reply re R&R" |
| 58 | 7/27/12 | Letter from Daniel S. Somers responding to July 24, 2012 letter and proposed reply brief from Tina Moukoulis | Arkansas | |